**TEXAS CO. v. CARMICHAEL et al.**

No. 662.

District Court, M. D. Alabama.

Dec. 7, 1935.

John S. Coleman, of Birmingham, Ala. (Bradley, Baldwin, All & White, of Birmingham, Ala., of counsel), for plaintiff.

Albert A. Carmichael, Atty. Gen. of Alabama, Frontis H. Moore, Asst. Atty. Gen., Peyton Bibb, Sp. Asst. Atty. Gen., Thomas J. Judge, of Birmingham, Ala., and Richard T. Rives, of Montgomery, Ala., for defendants.

Gessner T. McCorvey (of Stevens, McCorvey, McLeod, Goode & Turner), of Mobile, Ala. (J. S. Atkinson, of Shreveport, La., of counsel), for Gulf Refining Co., amici curiæ on behalf of plaintiff.

Frank J. Wideman, Asst. U. S. Atty. Gen., Andrew D. Sharpe, M. H. Eustace, and Paul R. Russell, Sp. Assts. to U. S. Atty. Gen., and T. D. Samford, Dist. Atty., of Montgomery, Ala., amici curiæ, on behalf of the United States.

Before HUTCHESON, Circuit Judge, and ERVIN and KENNAMER, District Judges.

ERVIN, District Judge.

This is a bill seeking to enjoin the state of Alabama from levying an excise tax on such gasoline as the complainant sells to United States government, in which it is contended that such tax would be unconstitutional if so levied.

Hearing was had on an agreement that the matter would be submitted both for a preliminary and final injunction. The submission was on an agreed statement of facts.

In this case it is contended that the Alabama statute levying an excise tax on gasoline is unconstitutional in so far as it undertakes to tax a sale of gasoline to the government.

In section 1 of the act of 1927 (Gen. Acts, p. 326), amending the act of 1923 (Gen.Acts, p. 36), we find a tax levied in the following words: "To impose an excise tax on persons, corporations, copartnerships, companies, agencies or associations *engaged in the business of selling, distributing, storing or withdrawing from storage* for any purpose whatsoever gasoline or other liquid motor fuels or devices or substitutes therefor in this State; and providing for the collection and payment of such tax and distribution of the funds derived therefrom, and providing for its enforcement and fixing a penalty for the violation of any of the provisions hereof."

It will be noticed that the tax is levied on persons "engaged in the *business* of *selling,* distributing, storing or withdrawing from storage for any purpose whatsoever."

It will be observed then that the statute classifies three different operations as separate businesses, namely: First, selling; secondly, distributing; and, thirdly, storing or withdrawing from storage the gasoline. Other portions of the act define these various businesses.

"The term 'Distributor' shall include any person who shall engage in the *selling* of gasoline as herein defined in this State by wholesale in domestic trade, but shall not apply to any transaction by such distributor in interstate commerce. The term 'retail dealer' shall include any person herein defined as 'distributor' who is also engaged in the sale of gasoline as herein defined, at any place in this State, in broken quantities. The term 'storer' as herein used shall include any person who ships gasoline into this State, in tank quantities and stores the same and withdraws or uses the same for any purpose." Section 2.

Section 3 of the act provides: "Every distributor, retail dealer or storer of gasoline as herein defined shall pay an excise tax of two cents per gallon upon the *selling,* distributing or withdrawing from storage for any use gasoline as herein defined in this State."

Here the tax is to be paid, not on the storage, but on the sale, distribution, or withdrawal from storage.

It further provides: "The excise tax imposed by subdivision (a) of this section shall apply to persons, firms, corporations, dealers or distributors storing gasoline and distributing the same or allowing the same to be withdrawn from storage, whether such withdrawals be for *sales* or other use —provided, that '*sellers*' of gasoline and its substitutes paying the tax herein provided may pay the same *computed and paid* on the *basis of* their *sales* as hereinafter

required and storers and distributors shall compute and pay this tax on the basis of their withdrawals or distributions." (All italics mine.)

It is observed: "That 'sellers' of gasoline and its substitutes paying the tax herein provided may pay the same computed and paid on the basis of their sales as hereinafter required and storers and distributors shall compute and pay this tax on the basis of their withdrawals or distributions."

Certainly sales are computed as such, while users are to be computed on the basis of withdrawals or distributions. How can it be contended then that sales are to be computed and paid as on storage? If sales are to be *computed and paid* on the basis of their *sales,* how can it be contended that such sales are to be computed on the storage of gasoline?

The act provides for monthly reports showing the amount of gasoline sold or withdrawn. Reports shall be sworn to. The act also imposes a penalty of 25 per cent. for failure to make this report.

There were several other acts passed imposing additional taxes aggregating 6 cents per gallon, but they contain the same verbiage, so the construction of one applies to all.

These definitions are the same in the act approved January 31, 1935, and also in the act of July 10, 1935, where the definition of a storer is in the following words: "The term 'storer' as herein used shall include any person who ships or causes to be shipped or receives, gasoline into this State in any quantities, and stores the same in any amount and withdraws or uses the same for any purpose."

It is contended by defendants that the tax is on the storage of gasoline measured by the number of gallons withdrawn from storage regardless of the purpose for which such withdrawals were made.

The Constitution (art. 1, § 8, cl. 3), in effect, forbids the use of either sales or withdrawals of gasoline as a measure for state taxation, when made either in interstate transactions or in direct sales to the government. Panhandle Oil Co. v. State of Mississippi ex rel. Knox, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, 56 A.L.R. 583.

In the first place, we see the tax is levied on persons engaged in these separate businesses dealing in gasoline, and not anywhere on the gasoline dealt in.

First, are those engaged in the business of selling gasoline, such as retail dealers who store the gasoline in tanks and withdraw it from tanks and deliver it into autos and such vehicles as may buy it, in other words, filling stations.

Second, the distributors or wholesalers.

Third, storers, persons who ship gasoline into the state in tank quantities and withdraw or use it for any purpose.

In each instance the tax is "measured by" the number of gallons sold, distributed, or withdrawn. It nowhere imposes a tax on storage alone.

It is manifest that no double taxation is imposed. It is also manifest that one person may be engaged in one or all these businesses, but without increasing the tax he is required to pay. If he sells the gasoline, he pays so much a gallon for such as he sells, but does not have to pay an additional tax for the distribution or withdrawal of such as he has sold.

Recognizing that all dealers in gasoline must first store it, section 156.2 of the act of 1935 says: "The excise tax imposed by section 156.1 hereof shall apply to persons defined in this chapter, storing gasoline and distributing the same or allowing the same to be withdrawn from storage whether such withdrawals be for *sale* or other *uses.*"

It is manifest that retail dealers or filling station operators must first store the gasoline in their tanks before they can retail it. The act manifestly contemplates that the retail dealers and distributors will be engaged in selling gasoline while the storer does not sell it but uses it himself in some way, so that he is taxed not on the sale, but on the use of the gasoline he withdraws from storage. This tax must have been imposed to cover those who brought gasoline into the state in large quantities and stored and withdrew it as needed for use to save paying the tax.

These people do not sell gasoline, but use it in their own vehicles or engines.

This is what the Alabama Supreme Court had before it in the case of State v. City of Montgomery, 228 Ala. 93, 151 So. 856, 857, where it is said: "A tax upon the separate acts of the owner in taking his property out of storage for his own use. * * * The acts in question impose a tax upon a *storer as well as* a *distributor* or retail *dealer.*"

So a storer is one who stores for his own use and not for the purpose of sale, and the tax is levied only where he withdraws the gasoline for his own use.

The act expressly recognizes the fact that both dealers as well as users may store gasoline and withdraw it from storage where it says: "Every distributor, retail dealer or storer of gasoline as herein defined shall pay an excise tax of two cents per gallon upon the *selling,* distributing or withdrawing from storage for any use gasoline as herein defined in this State." Section 3.

This seems to me to recognize the proposition that the tax is imposed not on the storage, but on the use for which it is withdrawn.

In Edelman v. Boeing Air Transport, 289 U.S. 249, 252, 53 S.Ct. 591, 592, 77 L. Ed. 1155, it is said: "It is at the time of withdrawal alone that 'use' is measured for the purposes of the tax. * * * A state may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the state, and placing it in the tanks of the planes, not withstanding that its ultimate function is to generate motive power for carrying on interstate commerce."

The act and the practice of the state has been where gasoline was withdrawn from one place of storage and placed in another no tax was imposed, yet here was a withdrawal from storage, but the purpose was not to use it or sell it, so again it was the use for which the withdrawal was made that determined whether the tax was imposed.

Suppose a man builds a large tank and stores gasoline for others at a price, he never sells or uses it, they withdraw it and place it in their filling stations for sale. He is in the business of storing gasoline, but he would pay no tax.

Or, if one figured the price would go up and he bought and stored gasoline in large quantities during a period of more than a year, he would pay no tax for that year. So we see the tax is not levied on the storage, but on the use for which it is withdrawn.

Again section 3 (a) says: "Every distributor, retail dealer or storer of gasoline as herein defined shall pay an excise tax of two cents a gallon upon the selling, distributing or withdrawing from storage for any use gasoline as herein defined in this State, provided however that this excise tax shall not be levied upon the *sale of gasoline in interstate commerce.*"

Why not add "or to the United States," for the one is as much protected by the Federal Constitution as the other.

Now if the withdrawal from storage of gasoline on a sale in interstate commerce is not to be taxed, why should not a sale to the United States government also be exempt?

In the instant case, we are not concerned with the withdrawal for use, but with the sale by one who is either a retail dealer or a distributor, or both, to the federal government, which seems to me to bring the facts in line with the case of Panhandle Oil Co. v. State of Mississippi ex rel. Knox, 277 U.S. 218, 48 S.Ct. 451, 452, 72 L.Ed. 857, 56 A.L.R. 583, where the court says: "The states may not burden or interfere with the exertion of national power or make it a source of revenue or take the funds raised or tax the means used for the performance of federal functions. * * * While Mississippi may impose charges upon petitioner for the privilege of carrying on trade that is subject to the power of the State, it may not lay any tax upon transactions by which the United States secures the things desired for its governmental purposes. The validity of the taxes claimed is to be determined by the practical effect of enforcement in respect of sales to the government. * * * Sale and purchase constitute a transaction by which the tax is measured and on which the burden rests. * * * To use the number of gallons sold the United States as a measure of the privilege tax is in substance and legal effect to tax the sale. * * * And that is to tax the United States—to exact tribute on its transactions and apply the same to the support of the State."

The Panhandle Case quotes the Mississippi act (Laws 1922, c. 116), which imposes a tax of one cent a gallon upon its sales, on persons engaged in the *business* of *distributing* gasoline or a *retail dealer* in gasoline. It excepts that sold in interstate commerce or purchased outside the state and brought in by the consumer for his own use.

The Alabama act also excepts sales in interstate commerce, but undertakes to tax the other exception, viz., the use of the gasoline in this state by the purchaser.

That is the only difference between the two acts, they both tax the sale, but the Alabama act also taxes the use of the gasoline.

If a sale by a dealer is reported as such and the tax so paid, it cannot be again imposed as on a withdrawal of the same gasoline.

■ The case of State v. Montgomery, supra; Nashville, C. & St. L. R. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191, and Edelman v. Boeing Air Transport, 288 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155, involved *only* the withdrawal for use and not sales to the government, and what was said would be applicable only to that feature of the act. No right is claimed in the instant suit as to gasoline used by complainant.

It is urged that State v. Montgomery is a construction of the act and is binding on this court, but it did not involve the question here presented.

Even if it did, it would not bind this court on the federal question as to whether a sale by a dealer to the government was exempt from state taxation.

■ In the Panhandle Case, the Mississippi act levied a tax on the business of selling or distributing gasoline, and the court held it invalid as to sales to the government as the effect was to raise the price the government would have to pay for the gasoline.

Here the tax is levied on persons engaged in the business of selling and distributing gasoline. Certainly the effect of this act will be to raise the price the government will have to pay for gasoline in Alabama.

"To use the number of gallons sold the United States as a measure of the privilege tax is in substance and legal effect to tax the sale. * * * And that is to tax the United States—to exact tribute on its transactions and apply the same to the support of the State." Panhandle Oil Co. v. State of Mississippi ex rel. Knox, supra.

I see no difference between the two cases.

Even treating it as a tax on the withdrawal for the purpose of a sale to the government, it would make no difference as the effect would be the same, viz., to increase the price to the government. On the argument, it was admitted that if the tax was levied on the sale to the government, it would be invalid.

Then why would it not be invalid if the tax is levied on the withdrawal on a sale to the government, as the effect would be the same?

■ The court will look beyond the mere phraseology to get the substance and effect, and so judge the transaction.

■ It is said, however, that the plaintiff should wait until sued and then raise the question as a defense, but the act imposes heavy penalties to be determined by the taxing authorities and they have made demand for the disputed tax, interest, and penalties, and under the rule laid down in Pennsylvania v. West Virginia, 262 U.S. 553, 592, 43 S.Ct. 658, 663, 67 L.Ed. 1117, 32 A.L.R. 300: "One does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough."

I feel constrained to hold that so far as the act undertakes to tax a sale to the government, it is violative of the Federal Constitution and should be enjoined. The act contemplated sales to be made after its passage.

HUTCHESON, Circuit Judge (dissenting).

Plaintiff's bill, while general as to the collection of gasoline taxes on all sales made and to be made by it to the agencies of the federal government, really was in two distinct portions, had two distinct objects. One was to enjoin the prosecution of suits against it on account of taxes on gasoline stored and withdrawn for sale to government agencies through a past five-year period, when the ruling and recognition of the state authorities was that these sales were exempt from the tax. The other was to enjoin the claim and collection of taxes in the future on gasoline which, under sales contracts it pleaded it had made with the United States, it would in future withdraw from storage and sell and deliver to agencies of the United States.

Upon the plainest principles, I think the collection of the back taxes may not be enjoined, for as appears from the pleadings and the agreed statement of facts, these taxes, if collected, will be collected by suit in which all of the plaintiff's defenses will be available to it. An injunction will not issue to restrain a suit which has been or is to be brought on the ground.

merely of the invalidity of the claim. Cavanaugh v. Looney, 248 U.S. 453, 39 S.Ct. 142, 63 L.Ed. 354; Boise Artesian Water Co. v. Boise City, 213 U.S. 276, 31 S.Ct. 720, 55 L.Ed. 611; Northport Power & L. Co. v. Hartley, 283 U.S. 568, 51 S. Ct. 581, 75 L.Ed. 1275; Champlin Ref. Co. v. Corporation Comm., 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403; Yarnell v. Hillsborough Packing Co. (C. C.A.) 70 F.(2d) 435. I do not understand the majority opinion to hold otherwise, or that under their opinion any injunction will be granted as to past transactions. The majority opinion does hold, though, and it is from that holding I dissent, that there is equity in plaintiff's bill for an injunction as to future transactions. This injunction, as I understand the opinion, will restrain the claim and collection of taxes upon all gasoline plaintiff withdraws in future, to directly or indirectly, as described in its bill, and in the agreed statement of facts, supply government agencies with which it has contracts.

My difference with the majority is fundamental. They think the tax is on the sale. With respect, I submit that it is not. The statute which lays this tax lays it on plaintiff as a storer in the state. It becomes payable by it when the gasoline is withdrawn for ultimate use by the storer, whether that use is to consume it or to part with title and possession of it by sale or otherwise. The Supreme Court of Alabama once,[1] and the Fifth Circuit Court of Appeals twice[2] has so declared. No contrary opinion has been called to my attention.

In the opinion of the majority it is said that Panhandle Oil Co. v. State of Mississippi ex rel. Knox, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, 56 A.L.R. 583, a suit at law for taxes, controls. I do not think so. There the tax was on the sale, not as it is here on the privilege of storing. That case did not hold, none has yet held, that taxes may not be collected merely because they fall on a person or a thing at some step in the process of getting an article to a governmental market. The contrary is well settled by the decisions of the Supreme Court as collected in Register v. Commissioner (C.C.A.) 69 F.(2d) 607, 93 A.L.R. 186. This is made particularly clear in Trinityfarm Construction Co. v. Grosjean, 291 U.S. 466, 54 S.Ct. 469, 78 L.Ed. 918. Here, as it was there, the taxpayer is an independent dealer. It is not a government instrumentality. The taxpayer here is a general storer of gasoline using the facilities of the state of Alabama to store its gasoline there under the protection of the police power of the state. It ought not to be doubted that in taxing its business as a storer, and in measuring the tax by the withdrawals from storage, the state of Alabama was not intending to, nor does it, tax "the operations of an instrument employed by the government of the Union to carry its powers into operation." To contend that it does seems to me to be running the principle of exemption into the ground, and doing so in connection with a tax which in most states keeps the highways up, assists to run the schools, and generally forms, perhaps, the most dependable and most generous source of revenue. I say nothing here of the wisdom or expediency of the tax. I merely note the wide, the universal employment by the state of it.

I admit that the principle of federal exemption was in the Panhandle Case, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, 56 A. L.R. 583, and the Grayburg Oil Co. Case, 278 U.S. 582, 49 S.Ct. 185, 73 L.Ed. 519, and of state exemption in the Indian Motorcycle Co. Case, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277, pushed further than I liked to see it pushed. But I do not, in this case, kick against the pricks. I merely insist here that the Supreme Court has made it clear that those cases went to the verge that the claim of this goes beyond.

But if the majority is right and I am wrong, in regard to the tax as tax, the exemption as exemption, there are other reasons grounded in equitable considerations why the injunction should not issue.

The plaintiff pleads and proves,[3] indeed, it bases its suit upon pleading and

---

[1] State v. City of Montgomery, 228 Ala. 93, 151 So. 856.

[2] Pan American Petroleum Corporation v. State of Alabama (C.C.A.) 67 F.(2d) 590, certiorari denied 291 U.S. 670, 54 S. Ct. 454, 78 L.Ed. 1060; C. E. Ervin and T. M. Stevens, Recv'rs v. State of Alabama 80 F.(2d) 432, decided Nov. 22, 1935; cf. Standard Oil Co. v. People of California, 291 U.S. 242, 243, 54 S.Ct. 381, 78 L.Ed. 775.

[3] "The Company has entered into a contract with the Treasury Department, Procurement Division, Washington, D. C. designated as Contract TPS 6068 Region No. 2 under the terms of which the Com-

proving that the United States government will not buy gasoline from it at a price which takes the tax into consideration, and that to obtain the business, plaintiff has already bound itself by contract to supply the gasoline needs of the agencies named at a price which has excluded the tax. In other words, plaintiff has absorbed the tax and thereby insured the government at all events from being burdened by it. Does a storer of gasoline who, in order to obtain government business, has so contracted, succeed to the government's exemption and thereby, by a kind of subrogation, acquire an affirmative equity in advance of sales for a general injunction as to future dealings? An injunction which supervising, overseeing, and auditing all of the transactions which the plaintiff will in future have, will require the court to determine as to each one as it arises, whether and to what extent the exemption applies? I do not think so. I should not think so if the bill alleged that all of the transactions were to be with agencies exercising admittedly governmental functions. In a controversy of this kind over the imposition and collection of a state tax, valid as to all of the other business the plaintiff does, it seems to me that equity would best stay its hand, and not by injunction undertake to supervise the state's fiscal and taxing activities.

Defendant, citing pertinent Alabama statutes, insists that plaintiff has, within the decision in Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447; Stratton v. St. Louis & Southwestern R. Co., 284 U.S. 530, 52 S.Ct. 222, 76 L.Ed. 465, an adequate remedy at law to pay the tax-

---

pany is required to make tank car deliveries FOB Mobile, Alabama, to the Quartermaster, United States Army, Fort McClellan, Alabama, and also to make deliveries of gasoline FOB Mobile, Alabama, consigned to the Quartermaster, United States Army, Maxwell Field, Alabama, and also deliveries of gasoline FOB Mobile, Alabama, to Tennessee Valley Authority Wilson Dam, Alabama. This contract covers the requirements that each of these agencies or departments of the United States may require from the period from October 1, 1935, thru December 30, 1935. A copy of this contract is hereto attached marked Exhibit '23' and is made apart hereof.

"The Company has also entered into a contract with the United States Department of the Interior, which contract is designated as No. LS 1959, under the terms of which the Company is required to make deliveries thru retail service stations to the United States Department of the Interior, the Administrative Division of the Bureau of Reclamation, the Public Works Administration, the Bureau of Indian Affairs, and such other bureaus of the Department of the Interior as may from time to time desire to purchase under said contract, or the requirements which said departments or agencies of the United States may need or desire to purchase in Alabama during the period from October 1, 1935 thru June 30, 1936. A copy of this contract is hereto attached."

The agencies to which plaintiff has been selling are; U. S. Shipping Board; Alabama Transient Bureau; Alabama Relief Administration; U. S. Consular Service; U. S. Marine Hospital No. 13; Mississippi Warrior Service; U. S. Public Health Service; U. S. Veterans Hospital No. 91; U. S. Coast Guard Service; U. S. Naval Service, Pensacola; R. O. T. C. Unit, Alabama Polytechnic Institute; U. S. Engineers Service; U. S. Collector of Customs; U. S. Department of Commerce; U. S. Lighthouse Service; U. S. Observation Squadron; Nitrate Plant No. 2; U. S. Department of the Interior; U. S. War Department; U. S. Department of Agriculture; Finance Officer, Maxwell Field; U. S. Department of Justice; U. S. Navy Department; U. S. Quartermaster, Maxwell Field; Federal Barge Line; U. S. Treasury Department; U. S. Post Office Department; U. S. Veterans Administration; Public Works Administration; U. S. Naval Reserve; U. S. Veterans Bureau; U. S. Government, Washington, D. C., Civilian Works Administration; Civilian Conservation Corps; Emergency Conservation Works; Tennessee Valley Authority.

It appears that plaintiff withdraws and delivers its gasoline (a) from bulk plants; (b) from company operated service stations; (c) from consignment service stations; (d) from independent service stations, deliveries being made in tanks and title passing to operator at the time of delivery.

Both the pleadings and the facts show that when representatives of employees of government agencies with whom plaintiff has contracts get gasoline from service stations, they present identification cards showing themselves entitled to purchase such gasoline for the United States or its departments or agencies. When such gasoline is gotten from independent dealers, the company replaces such gasoline without cost to them.

es and recover them back if they are due. Plaintiff denies that this is so. But considerations of adequate remedy at law aside, I think this is a case in which federal equity jurisdicton ought not to be exerted to interfere in matters involving the fiscal affairs of a state and its subdivisions, because there is lacking here a substantial showing of the existence of a right, and a really threatened and irreparable injury which demand the exercise of that jurisdiction. Pape v. St. Lucie Inlet Dist. and Port Authority (C.C.A.) 75 F. (2d) 865, and cases cited at page 869. Not that the federal court should here determine the validity or invalidity of the exemption claim. "All that the federal court does is to announce that it will stand aloof. It inquires whether anything has happened whereby a court of equity would be moved to impose equitable conditions upon equitable relief." Atlantic Coast Line v. Florida, 295 U.S. 301, 315, 55 S. Ct. 713, 719, 79 L. Ed. 1451.

No case has been cited, I have found none, where an injunction of this supervising kind has issued. When, as further appears from the pleadings and the agreed statement, the withdrawals which plaintiff seeks to protect from state tax will be for deliveries to government agencies without reference to whether these agencies are or are not, as to the matters they use the gasoline for, engaged in governmental functions, there is an additional reason why a general injunction should not issue.

The agreed statement of facts, as set out in note 3, supra, shows the names and to some extent the nature of the agencies with which plaintiff has contracted for future deliveries, and in regard to which it asks the injunction. Nothing is shown however, there or elsewhere from which it may be told as to some of these agencies, at least, whether the activities they engage in are in a tax exemption sense, governmental, or whether the uses for which the gasoline is bought will be. It is settled, by South Carolina v. United States, 199 U. S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann. Cas. 737; Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas. 1912B, 1312; Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307; Helvering v. Powers, 293 U.S. 214, 55 S. Ct. 171, 173, 79 L.Ed. 291, that "the state cannot withdraw sources of revenue from the federal taxing power by engaging in businesses which constitute a departure from the usual governmental functions,

and to which, by reason of their nature, the federal taxing power would normally extend." "The fact that the state has power to undertake such enterprises, and that they are undertaken for what the state conceives to be the public benefit, does not establish immunity. * * * The necessary protection of the independence of the state government is not deemed to go so far." Helvering v. Powers, supra.

What the state may not, neither may the government, do. If the establishment of departments of liquor control, as in the South Carolina and Ohio cases, and the operation of a railroad, as in Helvering v. Powers, are not the exercise by the state of ordinary and usual governmental functions within the principle of exemption from federal taxation, it would seem probable that some of the agencies which plaintiff's gasoline will activate will not be within the principle of exemption from state tax. At any rate, plaintiff actively claiming the exemption as a basis for the injunction has the burden of showing that they are, and this it has wholly failed to do. Surely in these circumstances equity should stay its hand from crippling, by a general injunction, the state's taxing power.

I dissent.