GRAVES, GOVERNOR OF ALABAMA, ET AL. *v.*
TEXAS COMPANY.

No. 727.  Argued April 2, 3, 1936.—Decided May 18, 1936.

*Mr. Frontis H. Moore,* Assistant. Attorney General of
Alabama, and *Mr. Richard T. Rives,* with whom *Mr.
Albert A. Carmichael,* Attorney General, was on the
brief, for appellants.

394

*Mr. John S. Coleman* for appellee.

By leave of Court, *Solicitor General Reed, Assistant Attorney General Jackson,* and *Messrs. David E. Hudson, Sewall Key, John M. Hudson,* and *Paul R. Russell* filed a brief on behalf of' the United States, as *amicus curiae,* challenging the taxes in question.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Appellee brought this suit against appellants, officers of the State of Alabama, to restrain the collection under statutes of that State of taxes in respect of gasoline and other liquid motor fuels—which for brevity we shall call "gasoline"—sold to the United States and used by it in performing governmental functions. Plaintiff applied to the court of three judges for a temporary and a permanent injunction. After hearing on an agreed statement of facts, the court held that the Alabama statutes assailed are not distinguishable from the Mississippi exaction condemned as unconstitutional in *Panhandle Oil Co.* v. *Knox,* 277 U. S. 218, and granted a permanent injunction. 13 F. Supp. 242. The governor and the other state officers appealed. 28 U. S. C., § 345. The United States, by brief filed here as amicus curiae, presented its argument asking affirmance on the ground that the taxes impose a burden on sales to it.[1]

In substance the Alabama statutes [2] provide: The Act of February 10, 1923, (not here involved) required every distributor and retail dealer to pay an excise tax of two cents per gallon "upon the sale" of gasoline. A distributor is one who sells gasoline at wholesale. A retail

---

[1] The government's brief states: On the basis of purchases in Alabama during the current year, it is estimated that the total annual added cost of gasoline would amount to $143,145.54. If Alabama succeeds in collecting the tax, other States will probably modify their statutes to produce a similar revenue; it is estimated that this would add a burden of $4,479,661.40 per year upon the United States. That figure is arrived at on the basis of four cents a gallon. The use of fuel oil by the Navy Department, which purchased 273,354,228 gallons in 1934, suggests a further burden on the United States.

[2] Enacted July 10, 1923, Gen. Acts 1923, p. 36, and amended August 27, 1927, Gen. Acts 1927, p. 326; January 25, 1927, Gen. Acts 1927, p. 16; July 27, 1931, Gen. Acts 1931, p. 859; November 5, 1932, Gen. Acts 1932, p. 314; January 31, 1935, Gen. Acts 1935, p. 30; July 10, 1935, Gen. Acts 1935, p. 508.

dealer is a distributor who also sells gasoline in broken quantities. The Act of January 25, 1927, required every distributor, retail dealer "or storer" to pay two cents per gallon "upon the selling, distributing or withdrawing from storage for any use." A storer is one "who ships gasoline into this State . . . and stores the same and withdraws or uses the same for any purpose." The Act of August 27, 1927, amending that of 1923, employed the same form of words to define the exaction and made a total tax of four cents upon selling, distributing or withdrawing for any use. The Act of July 25, 1931, added a cent and that of November 5, 1932 added another. The Act of January 31, 1935, repealed the 1931 and 1932 statutes and, in lieu of the excises laid by them, imposed one of two cents. The Act of July 10, 1935, repealed all the Acts then in force and in their place enacted that "Every distributor, refiner,[3] retail dealer or storer of gasoline . . . shall pay an excise tax of six cents ($0.06) per gallon upon the selling, distributing, storing or withdrawing from storage in this State for any use, gasoline . . ."

All the Acts here involved declare that the excise shall not be laid upon sales in interstate commerce and that the specified tax shall be paid but once. They make the excise apply whether "withdrawals be for sale or other use," declare that sellers may pay on the basis of their sales and require that others upon whom the excise is laid shall compute and pay the tax on the basis of their withdrawals. All must make monthly return of "sales and withdrawals" and preserve records of "sales, distributions or withdrawals." Anyone who shall violate any provision may be restrained "from distributing, refining, selling or withdrawing from storage any gasoline, the sale or withdrawal of which is taxable."

---

[3] The term "refiner" first appears in the 1932 Act; it has no application to this case.

Appellee is a Delaware corporation, authorized to do business in Alabama. It sells gasoline in the 67 counties of that State. Gasoline refined at Port Arthur, Texas, is transported by barges to the company's terminals at Mobile, Alabama, and Pensacola and Millville, Florida. Gasoline sold in Alabama is delivered from the Mobile terminal or the company's bulk plants in that State to which gasoline is shipped from the terminals and at which it is held in tanks until withdrawn for delivery at the plants to customers or for transportation to service stations where it is sold at retail to the public.

Practically all the gasoline received by the United States from the company in Alabama is sold and delivered pursuant to written contracts. Some provide for deliveries at the Mobile terminal, some at bulk plants and some at service stations. The deliveries from the Mobile terminal are made in railroad tank cars on tracks adjacent to the terminal. Gasoline delivered from bulk plants is that shipped from the terminals and stored in tanks at the plants until withdrawn. That delivered from service stations is shipped from the terminals to bulk plants and thence conveyed to the stations.

The United States requires that prices specified in bids and contracts shall be exclusive of state and municipal taxes. Between January 1, 1930, and September 22, 1935, the company sold and delivered to the United States in Alabama 286,639.36 gallons of gasoline. At the time of the trial, there were in force two contracts for sale and delivery of gasoline by the company to the United States in Alabama. One covered the period from October 1 to December 31, 1935, and called for deliveries at the Mobile terminal for the United States Army and the Tennessee Valley Authority. The other covered the period from October 1, 1935, to June 30, 1936, and called for service station deliveries for the Department of the Interior.

March 22, 1923, the attorney general of Alabama ruled that sales to the United States were taxable under the 1923 Act. But, after our decision May 14, 1928, in the *Panhandle* case, the attorney general, August 22, 1928, held that the Alabama statutes then in force (those enacted in 1927) were not distinguishable from that of Mississippi held repugnant to the federal constitution in the *Panhandle* case. He said: "Alabama also [in addition to taxing selling] taxes the distributing or withdrawing from storage for any use. It taxes but once, and where there is a sale, the tax is on the sale. Where there is no sale, but a distribution or withdrawing from storage for some use, other than selling, there is a tax on such withdrawal or distribution. We are not here considering such withdrawals, but only sales to the United States."

That construction was accepted by the state taxing officers and followed until July 5, 1935, when the then attorney general advised the tax commission that the taxes levied under the Acts of 1927, 1931 and 1932 were essentially different in character from those condemned in the *Panhandle* case. His ruling did not depend upon or result from the statutes enacted after 1927. He held the taxes were laid not upon sale but upon storage and subsequent withdrawal, accruing at the time of withdrawals, and to be computed upon the basis of withdrawals. He said that "so far as purchases of gasoline by the United States Government are concerned, these tax acts in question do not impose a burden upon the United States. . . . True it may be that the effect of these taxes may be to increase the price of the commodity which the Federal Government may desire to purchase."

The company has not reported for taxation or paid any tax under these Acts on gasoline sold to the United States since the attorney general's ruling of August 22, 1928. On August 30, 1935, the commission informed appellee that it could not "permit deductions from gasoline sales by

reason of gallonage sold to the United States." And, prior to the bringing of this suit, the State made demand for taxes upon all gasoline withdrawn and sold in Alabama during the preceding five years.

Appellants say that, upon the privilege of storing gasoline, the company is subject to a tax accruing upon and measured by the amount withdrawn, irrespective of subsequent sale or use. Upon that basis they maintain that the tax in respect of gasoline sold and delivered by the company to the United States is not one that operates to retard, impede or burden the exercise by the United States of its constitutional functions.

But mere storing, i. e., that unassociated with selling, distributing or withdrawing from storage, was not taxable under prior laws and is not taxable under the Act of July 10, 1935 now in force. While a storer is subject to excise in the Act of January 25, 1927 and subsequent statutes, storing without more is not enough to make one a storer. To be a storer, one must ship into the State and there store and withdraw gasoline for some use. Storing was not included among the acts or things taxed until the Act of July 10, 1935. That Act supersedes and consolidates the earlier levies. We read its taxing clause with its other provisions that in substance were taken from the earlier statutes. In all the measures involved, it unmistakably appears—and it is conceded by the taxing officers—that one who has paid a tax on selling is not taxable on distributing, storing or withdrawing from storage. The opinion of the attorney general, August 22, 1928, rightly held that the State taxes but once and, where there is a sale, the tax is on the sale. The purpose of the statutes subsequent to that of 1923 was to reach gasoline which was used but not sold within the State. But, excepting only the addition of the word "storing" in the taxing clause of the Act of July 10, 1935, there is nothing to suggest intention to tax "storing" as such.

Other provisions indicate that it was not the purpose so to tax. In all the Acts, it is stated: The excise shall apply whether the withdrawal be for "sale or other use"; sellers may pay on the basis of their sales but others shall pay on the basis of their withdrawals; all shall report their "sales and withdrawals" and keep records of the "sales, distributions or withdrawals"; violators of the Act may be restrained from distributing, refining, selling or withdrawing from storage (but not from storing) gasoline, the "sale or withdrawal" of which is taxable. Omission of storing from these and all other provisions relating to ascertainment of amount or enforcement of the taxes imposed tend strongly to negative intention to tax storing as such.

There are other indications that storing alone was not intended to be taxed. The tax commission has never required, and distributors, retail dealers and storers have not made, reports in respect of gasoline until it passes from seller to purchaser or until withdrawn for use. The State has never claimed a tax upon storing of gasoline withdrawn for sale and delivery in interstate commerce. In the absence of withdrawal, there is no tax no matter how long gasoline is stored. The amount at any time received or held in storage is immaterial. The tax depends solely upon the amount withdrawn. No notice is taken of losses by evaporation or otherwise, or of storing for hire or of storing after taxable sale, distribution or withdrawal for use. Clearly, storing alone is not the thing taxed; withdrawing is essential. *Ervin* v. *Alabama,* 80 F. (2d) 432. *Pan American Petroleum Corp.* v. *Alabama,* 67 F. (2d) 590. *State* v. *Montgomery,* 228 Ala. 93, 95; 151 So. 856. *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288, 293.

But, assuming that, by the Acts under consideration the State meant to tax mere storing, that purpose cannot be given effect in respect of the company's sales and

deliveries to the United States without infringing the constitutional principle which safeguards the federal government against state taxation. Plainly, the sales and deliveries by the company to the United States necessarily include storing and withdrawal from storage. A tax upon anything so essential to the sale of the gasoline to the United States is as objectionable as would be a tax upon the sale itself. The validity of the tax is to be determined by the practical effect of enforcement. To apply any other test of constitutionality would be to treat "a prohibition which is general, as if it were confined to a particular mode of doing the forbidden thing." *Brown v. Maryland*, 12 Wheat. 419, 444. As held in the *Panhandle* case (p. 222): "A charge at the prescribed rate is made on account of every gallon acquired by the United States. It is immaterial that the seller and not the purchaser is required to report and make payment to the State. . . . The amount of money claimed by the State rises and falls precisely as does the quantity of gasoline so secured by the Government. It depends immediately upon the number of gallons." So far as concerns the federal immunity from state taxation, a tax upon storing or withdrawal so involved cannot be distinguished from the tax on sales imposed by the Mississippi statute condemned as unconstitutional.

Appellants suggest that appellee has an adequate remedy at law and therefore may not resort to equity.

It was required to give a bond and obtain a license to carry on its business. Section 6, Act of October 6, 1932, Gen. Acts 1932, p. 57. It is required monthly to report and pay taxes to the tax commission for the previous month. Act of July 10, 1935, schedule 156.3.[4] All, including amounts paid under protest, are by the commission handed over to the state treasurer who retains

---

[4] The same provisions are found in the statutes repealed by the Act of July 10, 1935.

half and distributes the other half equally among the counties. Sch. 156.9–156.11. Failure for any month so to report is punishable by fine from $50 to $300, sch. 156.7, and the commission is required to fix the amount of the tax and to impose a penalty of 25%, sch. 156.14. And, in the absence of satisfactory showing by the company to the contrary, the commission may revoke its license, § 6, *supra*, and issue summary execution against its bond and property. The tax and penalties constitute a debt to the State and a lien upon all its property prior to all others save earlier liens for state taxes. Sch. 156.15. Appellants assume that suit to collect the taxes claimed is the only procedure contemplated. But that assumption is without support in the record. They have not bound themselves to refrain from doing anything that the statute empowers them to do to enforce payment of the taxes claimed. It does not appear that they are authorized so to bind themselves. In the absence of injunction against them, appellee, failing to pay the taxes they demand, is liable to be proceeded against in accordance with the state law.

November 22, 1928, the attorney general of Alabama advised the attorney general of the United States that Alabama had no statute authorizing refund of taxes that had been collected upon sales of gasoline to the United States. January 28, 1935, the gasoline department of the tax commission wrote appellee that, where the tax had been paid upon gasoline furnished the United States by dealer for appellee's account, there was no provision for refund.

Appellants intimate, but do not definitely claim, that a distributor or dealer, if illegally compelled to pay taxes on sales to the United States, would under Alabama law be entitled to recover the amount so collected. They cite the Act of September 9, 1927, Gen. Acts 1927, p. 635. It appears to extend only to taxes paid while their

amount or validity is in litigation. It contains no provision for interest. It was in effect when the attorney general made his ruling of November 22, 1928. They also cite the Act of July 17, 1931, Gen. Acts 1931, p. 527. It does not permit suit but merely authorizes the tax commission to refund. And finally they cite the Act of July 10, 1935. Section 379 gives to one who has paid taxes under protest the privilege of bringing suit within 60 days against the officer making the collection; it directs the court to determine what amount, if any, is excessive or illegal and to order it to be returned with interest by the State or its agencies receiving the same. Failure to sue within the specified period bars the claim. It is likely that a year or more would elapse before final determination of such a suit. In the meantime, monthly collections would have to be made, and so appellee would be compelled repeatedly, and at least as often as once every 60 days, to bring suits against the commission involving the same question. Upon obtaining the court's determination in its favor, appellee would be authorized, on presentation of certified copies of the judgment, to receive from the State the half it retained and from each of the counties its share of the other half. It would be necessary to follow the same course as to the amounts claimed in each of the suits. Resort may be had to equity in order to avoid the multiplicity of suits necessarily involved in the procedure prescribed for recovery of illegal exactions.

Appellee suggests that the provisions of the Act of July 10, 1935, are repugnant to § 14 of the Constitution of Alabama: "That the State of Alabama shall never be made a defendant in any court of law or equity." In support of that view, it shows that, since this suit was commenced, a telephone company brought suit under § 379 in the court below against the members of the state commission, appellants here, to recover license taxes paid

under protest, and that they have filed a plea to the jurisdiction of the court, asserting that "the real party in interest is the State of Alabama"; that § 379 purports to give the State's consent to be sued only in its own courts, and that it "is immune from being impleaded in a court of the United States under the provisions of the Eleventh Amendment."

It sufficiently appears that appellee had no plain, adequate or complete remedy at law. *Union Pacific R. Co.* v. *Weld County*, 247 U. S. 282, 285–286. *Atlantic Coast Line* v. *Daughton*, 262 U. S. 413, 426. *Di Giovanni* v. *Camden Fire Ins. Assn.*, 296 U. S. 64, 69. *Risty* v. *Chicago, R. I. & P. Ry. Co.*, 270 U. S. 378, 388. *American Airways* v. *Wallace*, 57 F. (2d) 877, 879. *Hopkins* v. *Southern California Tel. Co.*, 275 U. S. 393, 399–400.

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.

MR. JUSTICE CARDOZO, dissenting.

Under the Alabama statute, the appellee, the Texas Company, is a "storer." It is one "who ships or causes to be shipped or receives, gasoline into this State in any quantities, and stores the same in any manner and withdraws or uses the same for any purpose." If it did business in some other way, it might be taxable as a "distributor," or "refiner," or "retail dealer." Doing business as it does, it is taxable as a "storer." It brings into Alabama a dangerous commodity which it keeps there indefinitely for indefinite uses. For the privilege of doing this it must make a payment to the state upon the termination of the storage, whether the purpose of the withdrawal is sale or something else. The statute was amended by adding the word "storing" in order to cover

such activities. What the lawmakers have put into a statute, a court may not take out of it.

In its application to appellee, a tax thus conditioned is an excise upon the privilege of storage, and so the cases hold. *State* v. *Montgomery*, 228 Ala. 93; 151 So. 856; *Ervin* v. *Alabama*, 80 F. (2d) 432, 433; *Pan American Petroleum Corp.* v. *Alabama*, 67 F. (2d) 590. It is not transformed into a tax upon something else, or, more particularly, into a tax upon the privilege of sale, because payable when the gasoline is taken out of storage or because measured by the amount withdrawn. *Edelman* v. *Boeing Air Transport, Inc.*, 289 U. S. 249, 252; *Nashville, C. & St. L. Ry. Co.* v. *Wallace*, 288 U. S. 249, 268; *Ervin* v. *Alabama, supra; Pan American Petroleum Corp.* v. *Alabama, supra; State* v. *Montgomery, supra.* The nature of the excise being what it is, liability is the same whether withdrawal of the gasoline is for one purpose or another.

*Panhandle Oil Co.* v. *Knox*, 277 U. S. 218, is not a decision to the contrary. The tax considered in that case and condemned when applied to transactions with the government was upon the privilege of sale exclusively, and not upon some activity or condition antecedent thereto. The decision evoked dissent from four members of the court. It is now carried to new bounds by the ruling that "a tax upon anything so essential to the sale of the gasoline to the United States [as storage followed by withdrawal] is as objectionable as would be a tax upon the sale itself." If that ruling is to stand, it will equally forbid a tax upon the process of refining or upon transportation to a market (*Wheeler Lumber B. & S. Co.* v. *United States*, 281 U. S. 572), since these, as much as storage, are preliminary to sale. Cf. *Edelman* v. *Boeing Air Transport, Inc., supra; Nashville, C. & St. L. Ry. Co.* v. *Wallace, supra.* Not yet has the

immunity of government from indirect obstructions been pushed to that extreme.

Gasoline refined in Texas and transported to Alabama to be stored in tanks or terminals is there for general uses. Part of it in the usual course of business will be sold to the United States; part of it will be sold to others; part will be withdrawn without sale to anyone. This is not to say that the result would be any different though a definite sale were in view at the beginning of the storage. Even in such conditions, storage, like transportation, would be "not part of the sale but preliminary to it and wholly the vendor's affair." *Wheeler Lumber. B. & S. Co.* v. *United States, supra,* at p. 579. However, the indefinite extension of the uses simplifies the problem. The burden, if any, upon the activities of government is remote and indeterminate. *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514; *Burnet* v. *A. T. Jergins Trust,* 288 U. S. 508; *Trinityfarm Construction Co.* v. *Grosjean,* 291 U. S. 466. Sales to the United States are made under contracts for a stated term. There is no assurance that the tax or any part of it will be shifted to the buyer.

The decree should be reversed and the bill dismissed.

I am authorized to state that MR. JUSTICE BRANDEIS joins in this opinion.