

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Weaver H. Baker, Chairman
State Board of Control
Austin, Texas

Dear Sir:

Opinion No. O-4491
Re: Whether rates for gas and
electricity furnished to
State eleemosynary institu-
tions under contracts with
State Board of Control may
be raised by the amount of
new state and city taxes lev-
ied on gross receipts of
utility companies.

Your letter of March 6th requesting our opinion reads
as follows:

"Article 7060, R. C. S. 1925, as amended Acts
1941, 47th Leg. R. S., H. B. 8, Art. V, Sec. 1, lev-
ies a tax, graduated according to population on the
gross receipts of gas, electric light, power or
waterworks companies derived from sales within in-
corporated cities and towns; the same article pro-
vides that cities and other political subdivisions
of the State may impose charges upon such public
utilities to compensate for the use of streets,
alleys, and public ways, such charges not to exceed
in the aggregate the equivalent of 2% of the gross
receipts of such utilities.

"As shown by the list attached hereto, several
of the State eleemosynary institutions are now pay-
ing directly their proportionate part of the increas-
ed gross receipts tax levied under House Bill 8,
supra, in the form of additions made to the con-
tract rates on their monthly bills for electric
service. Also attached is a certified copy of an
ordinance of the City of Terrell, enacted under au-
thority of House Bill 8, levying a street and alley
use tax based upon the gross receipts of the local

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

gas company, said company has signified its intention to add the amount of this tax to the monthly gas bills of the Terrell State Hospital, which is located within the city limits of the city of Terrell.

"Your opinion is requested as to whether or not the State eleemosynary institutions are chargeable with the State gross receipts and municipal street and alley use taxes discussed above."

Your question, it seems to us, involves two distinct propositions:

(1) Does a state or city tax upon public utility companies (whether it be a franchise fee or rental or an occupation tax) which is measured by the gross receipts of the company constitute a tax upon a governmental instrumentality insofar as it is based on the gross receipts from gas and electricity furnished to state eleemosynary institutions?

(2) May the rates for gas and electricity furnished by the utility company to state eleemosynary institutions be increased by the amount of such tax?

With reference to the first of these two propositions, it is our opinion that neither the state occupation tax upon utilities levied by Article 7060, R. C. S., 1925, as amended by Acts 1941, 47th Legislature, R. S., House Bill 8, Article V, nor a rental or franchise fee imposed by a city (under the authority of said Act) upon a utility for use of the streets and alleys, not in excess of 2% of the gross receipts of such utility within such city can be construed as being a tax upon a governmental instrumentality (whether Federal, State or Municipal) by reason of the fact that the gross receipts of such utility may include, in part, receipts from gas, electricity or water furnished to governmental agencies. The tax or fee is levied upon the utility and not upon the governmental agency. The connection between the gas, water and electricity bought and paid for by the governmental agency and the tax upon the utility measured in part by the gross receipts therefrom is too remote to offend the constitutional tax immunity of governmental instrumentalities.

The situation is analagous to that before the United States Supreme Court in James v. Dravo Contracting Co., 302 U.S.

134, wherein it was held that the State of West Virginia might collect a tax of 2% on the gross receipts of a contractor from work performed by him in the construction of dams and locks for the Federal Government in the State. Chief Justice Hughes, in the opinion in that case declared, at page 160:

"But if it be assumed that the gross receipts tax may increase the cost to the Government, that fact would not invalidate the tax. With respect to that effect, a tax on the contractor's gross receipts would not differ from a tax on the contractor's property and equipment necessarily used in the performance of the contract. Concededly, such a tax may validly be laid. Property taxes are naturally, as in this case, reckoned as a part of the expense of doing the work. Taxes may validly be laid not only on the contractor's machinery but on the fuel used to operate it. In Trinity Farm Construction Co. v. Grosjean, 291 U. S. 466, the taxpayer entered into a contract with the Federal Government for the construction of levees in aid of navigation and gasoline was used to supply power for taxpayer's machinery. A state excise tax on the gasoline so used was sustained. The Court said that if the payment of the state taxes imposed on the property and operations of the taxpayer 'affects the federal government at all, it at most gives rise to a burden which is consequential and remote and not to one that is necessary, immediate or direct.' But a tax of that sort unquestionably increases the expense of the contractor in performing his service and may, if it enters into the contractor's estimate, increase the cost to the Government. The fact that the tax on the gross receipts of the contractor in the Alward case (Alward v. Johnson, 282 U. S. 509) might have increased the cost to the Government of the carriage of the mails did not impress the Court as militating against its validity."

While the Dravo case was decided by a divided court, its authority cannot now be questioned, having been recently cited with approval by the United States Supreme Court in the opinion by Chief Justice Stone, announcing the unanimous decision of the court in Alabama v. King & Boozer, 86 L. Ed. 1., wherein a state sales tax of 2% upon building materials was sustained as applying to materials purchased by a contractor engaged in constructing an army camp for the United States under a

"cost-plus-a-fixed-fee" contract. We quote from the opinion in the King & Boozer case:

> "So far as such a nondiscriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory, of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. So far as a different view has prevailed, see Panhandle Oil Co. v. Mississippi (277 U.S. 218) and Graves v. Texas Co. (298 U.S. 393), we think it no longer tenable."

This doctrine announced by the United States Supreme Court in the Dravo and King & Boozer cases, that a tax, otherwise valid, will not be stricken down because the economic burden of the tax may be "passed on" by the taxpayer to governmental agencies or other entities themselves immune from direct taxation has been adopted by the Supreme Court of Texas. See Grayburg Oil Co. v. State, 3 S. W. (2d) 427. In State of Texas v. City of El Paso, 135 Tex. 359, 143 S. W. (2d) 366, Mr. Justice Critz declared:

> "We now come to determine whether or not a dealer who sells motor fuel to a city for municipal use by such city on the public highways of the State is exempt from the four cents per gallon motor fuel tax levied by our motor fuel tax laws. Again referring to the above quoted statutes, we find that they contain no direct provision making such exemption. Also, we find that such statutes contain no language which would justify us in construing them as intending such an exemption. It follows that dealers who sell motor fuel to cities in this State for use on public highways are liable to pay the statutory four cents per gallon motor fuel tax levied by our motor fuel tax laws."

The foregoing authorities amply support our conclusion that a tax or fee, be it state or municipal, measured by a per-

centage of the gross receipts of a utility does not constitute a tax upon a state eleemosynary institution to the extent of the utility's revenues from such institution.

We turn now to the second phase of your question -- whether the rates for gas and electricity furnished by the utility company to state eleemosynary institutions may be increased by the amount of the tax; or in other words whether the state occupation tax or the city franchise fee may be "passed on" by the utility to the state institution in the form of higher rates. The answer to this question would in each instance depend upon the contract under which the electricity or gas is being furnished. Since in your letter you refer to "contract rates," we will assume that in each instance the rates are prescribed by individual contracts between the respective utility company and the Board of Control, rather than by municipal ordinance in the cities where the institutions are located. If we are correct in our assumption that the rates for the several institutions are prescribed by contract -- then the terms of such existing contracts will determine whether the new taxes may be "passed on" by the utility.

We have examined one of the contracts involved in your question, being an "Agreement for Industrial and Commercial Electrical Service," dated July, 1940, between the Texas Power & Light Company and the State of Texas, acting by and through the State Board of Control for electricity to be delivered at the State Home for Dependent and Neglected Children at Waco. This contract, after setting out the schedule of rates, contains the following provision:

"Plus the proportionate part of any new tax, or increased rate of tax, or governmental imposition or charge (except state, county, city and special district ad valorem taxes and any taxes on net income) levied or assessed against the Company or upon its electric business as the result of any new or amended laws or ordinances after January 1, 1938."

Under a contract containing the foregoing or a similar provision, the utility would be authorized to increase the rates specified in the contract by the "proportionate part of any new tax" such as that provided by Article V of House Bill 8, Acts 47th Legislature or by a new municipal tax imposed since the date of the contract. In the absence of such a provision in the contract under which gas or electricity is being furnished to a

consumer, any new tax imposed upon the utility could not affect the rates prescribed in the contract. This discussion, we repeat, is based on the assumption that the rates for gas and electricity being paid by the several state eleemosynary institutions are not fixed by municipal ordinance.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Walter R. Koch

Walter R. Koch
Assistant

APPROVED MAR 14, 1942

FIRST
ATTORNEY

WRK:db

