**James H. GUERTIN, Plaintiff**

v.

**CITY OF EASTPORT,
et al., Defendants**

**No. 01–CV–23–B–S.**

United States District Court,
D. Maine.

June 8, 2001.

Sandra Hylander Collier, Ellsworth, ME, for James H Guertin, plaintiffs.

Bruce C. Mallonee, Luke M. Rossignol, Rudman & Winchell, Bangor, ME, Daniel L. Lacasse, Calais, ME, for Eastport, City of, George Finch, defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

SINGAL, District Judge.

Presently before the Court is Defendants' Motion to Dismiss (Docket # 6), filed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons discussed below, the Court GRANTS the Motion.

## I.  STANDARD OF REVIEW

■ When deciding whether to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the Court construes the complaint "liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996). Also, the Court "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted." *Id.* at 1210. Because federal courts are courts of limited jurisdiction, the plaintiff has the burden of demonstrating the existence of federal jurisdiction. *See, e.g., Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir.1998).

## II.  BACKGROUND

Plaintiff James H. Guertin resides in the City of Eastport, within Washington County, Maine. Guertin was president of the Quoddy Realty Corporation, which purchased two parcels of land in Eastport in January of 1994. Quoddy paid a sum of $40,000 for the two tracts. The municipality, however, valued this property much differently; for the 1994–1995 tax year, the City of Eastport treated the value of the real estate as $292,597, and assessed property taxes commensurate with this much higher dollar valuation. The City continued to view the value of the two parcels as $292,597 for the 1995–1996 tax year.

Quoddy challenged the assessments by making two applications to the City for tax abatements for the 1994–1995 and 1995–1996 tax years. The applications were

supported by a real estate appraisal, suggesting an actual market value of $69,250. Eastport denied the requests for abatement. Quoddy appealed these determinations to the Washington County Commissioners, who denied the appeal. Quoddy then appealed to the Maine Superior Court, which found in the company's favor. The Superior Court ordered the County Commissioners to abate Quoddy's taxes to an amount based on a land value of $69,250 for both tax years. Eastport appealed this ruling to the Maine Supreme Judicial Court. *See Quoddy Realty Corp. v. City of Eastport,* 704 A.2d 407 (1998).

On January 15, 1998, the Maine Law Court ruled in Quoddy's favor, but held that neither it nor the Superior Court had the authority to order the County Commissioners to accept the $69,250 valuation. Rather, the Maine Law Court held that the courts could only remand to the County authorities, who would have to reconsider the company's applications for abatement. On remand, the County Commissioners ruled in Quoddy's favor on July 6, 2000, and adopted the evaluation of the $69,250 appraisal. The Commissioners abated Quoddy's taxes to match the $69,250 valuation for the 1994–1995 and 1995–1996 tax years.

At some point, Guertin acquired ownership of the real estate from Quoddy. The details of this conveyance, such as the purchase price, have not been presented to the Court, other than the fact that Bangor Savings Bank holds a mortgage and a note on the property.

Even though Quoddy won a tax abatement for the 1994–1995 and 1995–1996 tax years, the City of Eastport continued to value the land at $292,597 for the three subsequent tax years (1996–1997, 1997–1998 and 1998–1999) and treated the land's value as $203,063 for the most recent two tax years (1999–2000 and 2000–2001). Guertin disagrees with the City's valuation of his property during the last five years. In fact, he did not pay the assessed taxes in full during this five year period. Because he has not paid the assessed taxes, the City of Eastport instituted tax liens on the two disputed parcels, and the City began foreclosure proceedings on those liens. To prevent foreclosure, Bangor Savings Bank paid the City tax liens. Guertin did not reimburse Bangor Savings Bank for the tax liens right away, resulting in the Bank accelerating its note and demanding that Guertin immediately pay approximately $26,600 plus daily interest. Guertin paid off the note to the Bank with funds received from selling a fishing vessel.

Through counsel, Guertin has requested that the City abate its tax assessments for tax years 1996–1997 through 2000–2001. The City has refused to do so. Guertin did not appeal this refusal to the Washington County Commissioners. Instead, Guertin filed suit with this Court in February 2001 against both the City of Eastport and George "Bud" Finch, who has been the city manager of Eastport since 1994. Asserting two counts pursuant to 42 U.S.C. § 1983, Guertin asks for money damages and injunctive relief, specifically an order that the City of Eastport adopt the $69,250 appraisal for the past five tax years and cease and desist from foreclosing on the disputed tax liens.[1]

## III. DISCUSSION

Count I of Plaintiff's Complaint claims that Defendant City of Eastport, acting

---

1. Although it is unclear to the Court, the parties continue to contend that foreclosure is still a possibility. It appears that even though Bangor Savings Bank paid off some of the tax liens, other tax liens loom on the horizon.

under color of state law, has deprived Plaintiff of his constitutional rights to property, and Count II alleges that the City of Eastport and Defendant Finch have conspired to deprive him of his property rights. Based on Count I, Plaintiff seeks injunctive relief and money damages against the City. In Count II, Plaintiff demands damages from the City and Finch.

## A. Comity and the Tax Injunction Act

The Supreme Court repeatedly has ruled that based on the principles of comity, federal courts should not interfere with state tax schemes, so long as the state tax system provides remedies that are "plain, adequate, and complete." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *see also Nat'l Private Truck Council v. Okla. Tax Comm'n*, 515 U.S. 582, 586, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995) ("We have long recognized that principles of federalism and comity generally counsel that [federal] courts should adopt a hands-off approach with respect to state tax administration.... Since the passage of § 1983, Congress and this Court repeatedly have shown an aversion to federal interference with state tax administration."). Also, Congress passed the Tax Injunction Act of 1937, which states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. Federal courts treat the comity doctrine and the Tax Injunction Act as two facets of the same proposition: that plaintiffs cannot receive relief—money damages, declaratory judgment or an injunction—from federal courts regarding state tax issues, unless that plaintiff can demonstrate that the state system is procedurally inadequate. *See Nat'l Private Truck*, 515 U.S. at 587–88, 115 S.Ct. 2351. Courts must "construe narrowly" this exception. *See California v. Grace Brethren Church*, 457 U.S. 393, 413, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982).

Consequently, the comity doctrine's standard of "plain, adequate, and complete" and the Tax Injunction Act's standard of "plain, speedy and efficient" are functionally equivalent. *See Fair Assessment*, 454 U.S. at 116, 102 S.Ct. 177. Supreme Court precedent demonstrates that to meet these standards, state law must provide a procedure whereby an aggrieved taxpayer is entitled to a "full hearing and judicial determination" at which the taxpayer may raise "any and all constitutional objections to the tax." *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).[2]

## B. Efficiency of the State Procedures

Plaintiff does not argue that he has been, or would be, denied a full hearing and judicial determination. Rather, he argues that Maine's tax abatement system is fatally inefficient, thereby triggering the exception of the Tax Injunction Act.[3] The

---

**2.** Also, if a taxpayer proceeds through a state system unsuccessfully, she "may ultimately seek review of the state decisions in" the Supreme Court. *See Fair Assessment*, 454 U.S. at 116, 102 S.Ct. 177.

**3.** Plaintiff does not dispute that the Maine system is plain, but he does imply that the state procedure is not speedy because it took

nearly two and one half years for the Washington County Commissioners to issue a determination after the Maine Law Court remanded the matter to them. From this, Plaintiff seems to conclude that because it took the County two and one half years to make a determination after remand, it is quite likely that the County will take a similar period of time addressing any appeal he may file

crux of Plaintiff's argument is that it is not efficient for taxpayers to have to file suits for each separate tax year, thereby proceeding through the state system on multiple claims.[4] *See Nat'l Private Truck,* 515 U.S. at 591 n. 6, 115 S.Ct. 2351 (noting that if a state system requires a taxpayer to file multiple actions, it may be an inefficient system); *Rosewell,* 450 U.S. at 518 n. 22, 101 S.Ct. 1221 (same). Moreover, Plaintiff argues that he should not have to reapply to challenge tax valuations when the Maine Law Court already has held that a particular assessment was imposed incorrectly against the same parcel of land.

### 1. Number of Lawsuits

■ Plaintiff argues that filing more than one lawsuit imposes an inefficient burden on him. Plaintiff relies on *Georgia Railroad & Banking Co. v. Redwine,* 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952), in which a large corporation sought to prevent the imposition of state taxes against a multitude of properties dispersed throughout numerous localities. *See id.* at 303, 72 S.Ct. 321. The Supreme Court

found that to challenge the taxes in the state system, it "would require the filing of over three hundred separate claims in fourteen different counties to protect the single federal claim asserted by appellant." *See id.* at 323, 72 S.Ct. 321. Therefore, the Supreme Court held that such a multiplicity of lawsuits rendered the state's remedy inefficient, thereby permitting federal jurisdiction over the dispute. While the plaintiff in *Georgia Railroad* would have had to file more than three hundred actions, the present Plaintiff would have to file no more than five separate actions for the 1996–2001 tax years. The Court is not convinced that five separate lawsuits is sufficiently multiple to satisfy the inefficiency exception to the Tax Injunction Act.

Moreover, the Maine system appears quite amenable to consolidating tax abatement actions. *See, e.g., Quoddy,* 704 A.2d at 408 n. 1 (Quoddy's two tax abatement appeals consolidated into one action). Maine statute specifically permits claimants to consolidate tax appeals regarding multiple parcels of land. *See* 36 M.R.S.A.

for the 1996–2001 tax years. Even if Plaintiff were to make the argument that the process was too slow, such an argument would fail. *See, e.g., Rosewell,* 450 U.S. at 521, 101 S.Ct. 1221 ("we cannot say that [a] 2–year delay falls outside the boundary of a 'speedy' remedy."); *Parker v. Agosto–Alicea,* 878 F.2d 557, 559–60 (1st Cir.1989) (finding that Puerto Rico's tax system was sufficiently "plain, speedy and efficient" even though taxpayers initially appealed tax assessment in 1985 but did not receive denial until 1989).

**4.** The relevant portion of the Maine code, 36 M.R.S.A. § 841 *et seq.,* enables a plaintiff to challenge a tax assessment by applying for an abatement to the local tax assessors. If the tax assessors deny the application for abatement, or fail to respond to it within sixty days, then the taxpayer may appeal his case. Maine law provides for different appellate bodies. If the property is worth $1,000,000 or more, then the taxpayer may appeal the

denial of tax abatement to the State Board of Property Tax Review. If the property is worth less than $1,000,000, then the taxpayer appeals to a local appellate body. If the property is within a municipality or county that has established a "board of assessment review," then the taxpayer appeals to that board. If neither the county nor the municipality has established a board of assessment review, and if the property has been assessed at less than $1,000,000, then Maine statute simply leaves it to the county commissioners themselves to hear tax abatement appeals. Neither the City of Eastport nor Washington County has established a board of assessment review, and therefore the Washington County Commissioners are responsible for conducting review of the instant disputed properties. If the county commissioners deny a taxpayer's appeal, or fail to respond to it within sixty days, the applicant may appeal to the Maine Superior Court pursuant to Maine Rule of Civil Procedure 80B. *See* 36 M.R.S.A. § 844.

§ 849. Without discussion, the Maine Law Court has treated this statute to permit parties to consolidate tax appeals for different tax years too. *See, e.g., City of Biddeford v. Adams,* 727 A.2d 346, 348 (Me.1999). Furthermore, it appears that Plaintiff may be able to consolidate his appeals to the local administrative authority. *See, e.g., City of Waterville v. Waterville Homes, Inc.,* 655 A.2d 365, 366 (Me. 1995) (noting that taxpayer consolidated appeals of two different tax years into one appeal before municipal board of assessment).

### 2. Prospective Relief

Next, Plaintiff contends that it is inefficient for him to have to file suit separately year after year, and that he should be able to obtain prospective relief in federal court. *See, e.g., Nat'l Private Truck,* 515 U.S. at 591 n. 6, 115 S.Ct. 2351; *Rosewell,* 450 U.S. at 518 n. 22, 101 S.Ct. 1221. Plaintiff cites *Garrett v. Bamford,* 538 F.2d 63 (3rd Cir.1976), in which the Third Circuit held that federal courts had jurisdiction over a dispute arising when a number of taxpayers challenged a Pennsylvania county's method of calculating property taxes in such a way that was alleged to be racially discriminatory. *See id.* at 65. The court analyzed Pennsylvania law and found that the group of taxpayers would not be able to bring a class action suit in state court, but instead would have to file multiple suits involving identical issues. The court based its decision primarily on the state system's lack of class action relief. Also, the court found that the plaintiffs would have to reapply to the state courts each year to prevent possible future discriminatory tax valuations. "Where a state remedy for an allegedly unlawful tax requires repetitive suits year after year, 'resort may be had to equity ... to avoid the multiplicity of suits....'" *Id.* at 72 (quoting *Graves v. Tex. Co.,* 298 U.S. 393,

403, 56 S.Ct. 818, 80 L.Ed. 1236 (1936), *overruled on other grounds by Alabama v. King & Boozer,* 314 U.S. 1, 9, 62 S.Ct. 43, 86 L.Ed. 3 (1941)). Based on this language, Plaintiff argues that he will have to continue suing the City each year to obtain relief.

Plaintiff, however, overlooks the fact that the Third Circuit revisited this lawsuit two years later. *See Garrett v. Bamford,* 582 F.2d 810 (3rd Cir.1978) (hereinafter *"Garrett II"*). After the court's first ruling, Pennsylvania's state legislature amended the tax code to permit aggrieved taxpayers to file class action lawsuits. Because of this fundamental change, the federal district court found that it did not have subject matter jurisdiction over the case. Again on appeal to the Third Circuit, the plaintiff taxpayers argued that even though Pennsylvania law permitted class action lawsuits, it still would require them to reapply year after year to obtain the tax relief that they sought. In response to this argument, the Third Circuit briefly stated that because

> there is a statutory requirement of an annual assessment, ... that the Pennsylvania Constitution requires uniformity, and that the court of common pleas has the statutory power 'to make such changes as may be right and proper,' we fail to see how a federal court utilizing the Fourteenth Amendment can accord appellants any quantum of relief exceeding that which the state courts can order under the Pennsylvania Constitution and statutes.

*Id.* at 817 (quoting language from 72 Pa. Stat. Ann. § 5350, since recodified at 72 Pa. Stat. Ann. § 4844.1(b)). Without much discussion, the court found that the plaintiffs' argument failed to establish multiplicity that would render the state system fatally inefficient, and the Third Circuit

affirmed the district court's dismissal of the action.

Like Pennsylvania, Maine also requires that tax assessors make assessments each year. *See* 36 M.R.S.A. § 709. Likewise, the Maine Constitution requires uniformity in the assessment of property taxes. *See* Me. Const. art. IX, § 8 (discussed in *Quoddy*, 704 A.2d at 409). The third factor relied upon by the Third Circuit, however, differs somewhat from Maine law. When a Pennsylvania taxpayer appeals to the state court, the court proceeds de novo and has the authority to determine the market value of property and to determine the proper tax assessment against that property. *See* 72 Pa. Stat. Ann. § 4844.1. In Maine, the courts do not have the authority to valuate land or to determine the proper amount of taxes, but they may reverse and remand erroneous decisions made by county commissioners. *See, e.g., Quoddy*, 704 A.2d at 409. Thus, even though Maine courts cannot make all "changes as may be right and proper," the courts can reverse and remand faulty decisions by the local appellate bodies.

Furthermore, when comparing the first *Garrett* case and *Garrett II*, it is clear that the Third Circuit was primarily concerned with the lack of class action options for plaintiffs, and that the brief discussion regarding the possibility of prospective relief was ancillary to the class action matter. Moreover, the plaintiffs in *Garrett* were challenging a discriminatory valuation method applied to countless properties. In the present action, Plaintiff is not challenging a method of valuation or assessment, rather, he is assailing discrete over-assessments on two specific properties. Based on the foregoing, the Court finds that the holding in *Garrett* does not compel a finding that the Maine system is inefficient by virtue of requiring aggrieved taxpayers to file each year to challenge tax assessments imposed for different years.

### 3. Different Issues & Parties

Finally, courts may find that a state system is inefficient due to multiplicity only if recourse to the state system would require "'numerous suits between the same parties, involving the same issues of law or fact.'" *Nat'l Private Truck*, 515 U.S. at 591 n. 6, 115 S.Ct. 2351 (quoting *Matthews v. Rodgers*, 284 U.S. 521, 530, 52 S.Ct. 217, 76 L.Ed. 447 (1932)). It is a well-settled principle that each tax year constitutes a distinct period of time representing the basis for a separate cause of action. *See, e.g., Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 362, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984); 36 M.R.S.A. § 502 (establishing tax year as April 1 to April 1 of the following year). Plaintiff cannot argue that the five tax years from 1996 to 2001 involve the same issues of fact because much can change over five years, including the actual market value of the land. Similarly, Plaintiff is not necessarily entitled to prospective relief because each new year the facts of the case may change. Moreover, Plaintiff ignores the fact that the instant action does not involve the same parties that participated in the prior suit. *See Quoddy*, 704 A.2d 407. Even though the Quoddy corporation won a tax abatement, that does not necessarily mean that Plaintiff is entitled to one as well.

In short, even though Plaintiff may have to file more than one lawsuit in state court, that does not render Maine's tax abatement procedure fatally inefficient. Therefore, the narrow exception to the Tax Injunction Act is not applicable. Based on principles of comity and the Tax Injunction Act, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims.

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendants' Motion to Dismiss.

SO ORDERED.