STATE *ex rel. v.* TEXAS Co. *et al.*

(*Nashville,* December Term, 1937.)

Opinion filed April 2, 1938.

Rehearing denied May 27, 1938.

SEAY, STOCKELL, EDWARDS & BARKSDALE, of Nashville, for appellants.

LEWIS S. POPE and J. WHITWORTH STOKES, both of Nashville, for appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By the bill the State seeks to recover from the Texas Company $37,072.10, an alleged deficiency in the gasoline privilege tax covering a period of more than three years. The chancellor entered a decree in favor of the State for $20,626.57.

The gasoline tax statutes were amended in several particulars by chapter 130 of the Public Acts of 1933. These statutes as amended appear in Williams' Annotated Code of Tennessee at sections 1126 to 1147, inclusive. Section 1130, the construction of which is the sole question before this court, first appeared in the 1933 act, being section 4 thereof, and is as follows:

"Allowance under general rule, covering loss of gallonage resulting from evaporation, handling, and unloading, must be uniform for all distributors, and other persons, required to pay the tax; and must be based on true invoice receipts."

The commissioner of finance and taxation, pursuant to the authority vested in him, on June 14, 1935, promulgated the following regulation:

"Allowance under general rule as provided for in section 1130, Code of Tennessee, 1932, and all Acts amendatory thereof, covering loss of gallonage resulting from evaporation, handling and unloading for all distributors or other persons required to pay the tax, shall be one per centum and shall be based on true invoice receipts at bulk station distributing points.

"Allowance under special rule covering loss of gallonage due to fire, flood and storm, exclusive of loss resulting from causes listed under the general rule, will be made, provided such loss is immediately reported to the Commissioner of Finance and Taxation; and provided further, that an affidavit is made before a Notary Public setting out a complete description of the loss sustained, together with the further facts as to the nature of the casualty and the date and time it occurred; provided that proof of such loss shall be satisfactory to the Commissioner."

Prior to the adoption of section 4 of the Public Acts of 1933, chapter 130, no allowance whatsoever had been provided for loss due to evaporation, handling, and unloading.

Under sections 1127 and 1128 of the Code, as amended by Pub. Acts 1933, chapter 130, sections 2, 3, the tax is based upon the amount of gasoline received.

Section 1131, as amended by Pub. Acts 1933, chapter 130, section 5, provides that "Each person refining, storing, selling, distributing, or handling gasoline or distillate in this State, shall keep a record showing from whom the same was received, the date of its receipt, and the number of gallons received," etc.

By section 1132, as amended by Pub. Acts 1933, chapter 130, section 6, the distributor is to file with the commis-

sioner of finance and taxation a monthly report of the number of gallons of gasoline received.

Section 1147, as amended by Pub. Acts 1933, chapter 130, section 18, makes it the duty of the commissioner to furnish forms for distributors and dealers to use in making the monthly reports. The commissioner did furnish forms which provided for a reduction of 1 per cent. of the number of gallons actually received.

The defendant made monthly reports in accordance with said forms from June, 1933, to December, 1936, at which latter date the original bill herein was filed. Said reports were approved by the Department of Finance and Taxation.

It is the theory of the State that the deduction of 1 per cent. should be calculated on the number of gallons shipped from the refinery rather than on the gallonage received at destination. The State contends that the Legislature provided two methods for computing the gas tax: (1) To pay on the gallonage actually received without any deduction; and (2) a discount of 1 per cent. from the gallonage shipped from the refinery; and that, since defendant chose the latter method, it is liable for the deficiency sued for. We find no support in the statutes for this contention. The Legislature has from the beginning based the gasoline tax on the amount received by the distributor. The Legislature was unwilling to have the tax computed on the refinery invoice for the reason that one of the expedients invented to evade the tax is to bill or invoice the gallonage below the quantity actually pumped into the tank car. Had the Legislature purposed to calculate the loss on the gallonage shipped from the refinery, it could easily have expressed such intention in unmistakable language. The gasoline is not

handled or unloaded until it is received, and, in our opinion, the intention of the Legislature was that the deduction should be calculated by the same method as that employed in determining the amount of the tax, namely, on the actual amount of gasoline received by the distributor or dealer.

The controversy herein arises out of a difference as to the interpretation of the words "true invoice receipts."

In construing a statute, the court must, if possible, give every word and phrase some meaning. *Levy & Co. v. Davis*, 125 Tenn., 342, 142 S. W., 1118.

The three words we are considering are thus defined in Webster's New International Dictionary (1935 edition):

True: "Conformable to fact; in accordance with the actual state of things; correct, not false, erroneous, inaccurate, or the like."

Invoice: "The lot or set of goods as shipped or received; as, the merchant receives a large invoice of goods."

Receipt: "Act of receiving; also, the fact of receiving or being received. That which is received; that which comes in, in distinction from what is expended, paid out, sent away, and the like."

Giving these words their ordinary meaning, it seems quite clear that the Legislature intended that the reduction should be computed upon the actual goods (gasoline) received.

We have been cited to several decisions, which we have examined, in support of the respective theories of the

parties, but in neither case was the language of the statute under consideration similar to ours.

For the reasons stated, the decree of the chancellor will be reversed and the bill dismissed.