# STATE TAX COMMISION v. ASSOCIATED OIL & GAS CO. et al.

No. 6141.   Decided Jan. 22, 1940,   (100 P. 2d 966.)

*Alfred Klein,* of Los Angeles, Cal., *Alvin I. Smith, Grant A. Brown,* and *Garfield O. Anderson,* all of Salt Lake City, and *Joseph Chez,* Atty. Gen., for appellant.

*Louis H. Callister* and *Ned Warnock,* both of Salt Lake City, for respondents.

McDONOUGH, Justice.

Appeal from the District Court of the Third Judicial District. Judgment below was for the defendants and plaintiff appeals. The point in issue is: At what point should certain gasoline which was imported into the state have been measured for tax purposes? The parties are in agreement that the tax in question was levied on the sale and use of

the gasoline, but they disagree as to the time when the amount of gasoline should have been measured. It should be noted that the complaint filed by appellant alleges that a deficiency amount is due for the period from January 1, 1936, to March 31, 1938. Since that time sections of the statute which we are asked to construe have been amended. Our decision, therefore, will construe the statute as it then stood and will not be an interpretation of the statute as amended.

Respondent oil company in this case is a "distributor" of gasoline as that term is used in the statute. It imports gasoline from outside the state, holds such gasoline in storage and distributes it to retail service stations where it is sold to customers. It is the contention of defendant oil company that inasmuch as the tax levied by the state on gasoline was on the "sale or use" of said commodity the amount should have been measured at the time said gasoline was withdrawn from its storage tanks in Salt Lake City. Respondent submitted reports and paid taxes to the State Tax Commission on that basis.

The Tax Commission, on the other hand, insists that though the tax is levied and imposed upon the sale or use of motor fuels, the statute specifically fixes the gallonage of gasoline upon which a distributor must pay the tax, as the amount actually brought into the state, less 3% thereof "to allow for evaporation and loss in handling and expense of collection." It, consequently, using the invoices of gasoline shipped to defendant to determine the amount imported, assessed an additional tax against defendant covering the difference between the amount reported by the latter and the amount computed by the Commission as imported.

Section 57-12-5, R. S. U. 1933, reads in part:

"There is hereby levied and imposed an excise tax of four cents per gallon upon the sale or use of all motor fuels sold or used in this state, * * *."

Section 57-12-6, R. S. U. 1933, requires every distributor of, and retail dealer in, motor fuel to render a monthly report of the number of gallons "sold or used" during the preceding month.

Section 57-12-7, as amended by Chapter 41, Laws of Utah 1933, provides:

"From the gross amount of motor fuels produced and sold or shipped into the state and sold or used, there shall be deducted three per cent to allow for evaporation and loss in handling and expense of collection. Producers and refiners shall report the total amount produced or refined and sold in this state from which three per cent deduction shall be made, and those shipping into this state shall report the total amount received for sale in this state and from such amount there shall be deducted three per cent."

Section 57-12-5, supra, it is clear, levies a tax upon the sale or use, within the state, of motor fuels. Section 57-12-6 requires that a distributor shall report the number of gallons thereof sold during the preceding month. This report obviously is made for the purpose of determining the amount of the tax. Under Section 57-12-8, as amended by Laws 1933, c. 41, the report must be filed on or before the tenth day of each month, and Section 57-12-9 requires payment of the tax on or before the fifteenth of each month. Section 57-12-7, supra, it is patent, fixes a formula for determining the gallonage of motor fuel upon which the tax is to be computed. The first sentence of such section provides that "from the gross amount of motor fuels produced and sold or shipped into the state and sold or used, there shall be deducted three per cent to allow for evaporation and loss in handling and expense of collection." The defendant does not contend that it may make the deduction therein mentioned from the amount actually sold. Its contention is twofold: (1st) as stated above, that after importation of motor fuel it may be held in storage until it is to be distributed and then when an amount is withdrawn from storage for use or sale it should report such amount and deduct therefrom the three per cent before computing the tax; (2nd) that plaintiff's Exhibit

"A," hereinafter discussed, which in effect was the Commission's computation of the tax, was designed to show not the gallonage actually received in the state by defendant, but the gallonage shown by invoices to have been shipped from without the state, from which the Commission computed the tax deficiency after deducting the three per cent.

As to the first contention, we note that the only section of Title 57 which makes reference to the three per cent deduction is the section last mentioned. The second sentence thereof, read as a formula for reporting the amount of motor fuel "sold or used," is clear and unambiguous. As to producers and refiners, the first clause thereof states that they "shall report the total amount produced and refined and sold in this state from which three per cent deduction shall be made." The sentence concludes "and those shipping into this state shall report the total amount *received for sale in this state* and from such amount there shall be deducted three per cent." (Italics added.)

The language clearly expresses the intention that the importer report the total amount received for sale. From this amount the three per cent deduction shall be made to take care of the losses mentioned. The formula—fixed by the statute which imposes the tax and not by administrative rule—simply provides a method of determining the amount sold or used. The tax is collected from the distributor. To determine the amount thereof the statute specifies that four cents per gallon should be computed, not on the total gallonage imported but on the amount sold or used. And the amount sold or used is found by deducting three per cent from the amount received by the importers.

Plaintiff cites as supporting its position *Standard Oil Co.* v. *Fitzgerald,* 6 Cir., 86 F. 2d 799; *State* v. *Standard Oil Co. of Indiana,* 222 Iowa 1209, 271 N. W. 185; *State* v. *Texas Co.,* 173 Tenn. 154, 116 S. W. 2d 583. Defendant cites *Graves* v. *Texas Co.,* 298 U. S. 393, 56 S. Ct. 818, 80 L. Ed. 1236. None of these cases is directly in point because the wording of the statutes in different states varies. We have found none

identical with the Utah statute. Our examination of the cases does reveal, however, that the levying of a tax on the gasoline imported, measured as it is received or measured as it is placed in receptacles outside the state for shipment into the state, is common. The allowance of a three per cent deduction for evaporation, leakage, etc., of the gasoline imported is also common.

Defendants state, however, that no measure was made of the gasoline actually imported and therefore the amount which the state seeks to tax is unknown. The Tax Commission sought to introduce at the trial as its Exhibit "A" hereinabove referred to, a summary sheet of figures ■ based on the invoices of the amount of gasoline shipped from outside the state to defendant in the state, which invoices were examined by the Tax Commission in its investigation of defendant oil company's books and records. These figures indicated the gasoline shipped to defendant in Salt Lake City and constituted the basis of the Tax Commission's assessed deficiency. The trial court rejected this proposed exhibit, and plaintiff has assigned this as error. No argument is made that the exhibit had not been supported by a sufficient preliminary showing as to its compilation nor as to the form in which the evidence was proffered. Appellant argues and respondent denies that the data therein contained is relevant and material to the issue presented.

Since, as shown, the tax was to be computed with reference to the "amount received for sale" but defendant oil company kept no record of such amount, the Tax Commission was compelled to seek a method of determining this amount. In doing so, it determined the amount of gasoline dispatched with its destination as Salt Lake City, as indicated on invoices sent to defendant in Salt Lake City. Obviously this is not conclusive evidence of the amount received, but it raises a presumption prima facie that such amount was received in Utah. That a lesser amount actually reached its storage tanks may be shown by the importer.

It is to be observed that under the construction herein made of Sections 57-12-6 and 57-12-7, supra, it was incumbent upon defendant to report the amount received. That it failed to do so and that it failed to keep a record thereof, should not preclude the proving of facts tending to show the gallonage that should have been reported.

The lower court should have admitted Exhibit "A" as presumptive evidence of the amount of gasoline received, subject to rebuttal by defendant.

Defendant argues that the Commission in the tax return drawn by it for use by distributors, places a construction of the Act contrary to its contention here in that such return calls for a report of motor fuels sold or used in the state and that there is nothing on such form to indicate that receipts are to be the basis of tax computation. It would serve no purpose to have set out the details of such "return." Suffice it to say that our perusal thereof definitely reveals that it is drawn in conformity with the construction of the Act which plaintiff seeks.

There is a controversy as to the weight that should be given to Regulation 4 issued by the Tax Commission in determining the meaning of the statute. The regulation states that motor fuels are deemed to be used when withdrawn from storage and are at that time subject to tax. Plaintiff asserts that the regulation does not state that the measure of amount to be taxed is at the time of withdrawal, but only fixes that as the time for paying the tax. Plaintiff further asserts that even if the regulation did provide for measurement at the time of withdrawal from storage, the statute is controlling and that defendant cannot hide behind the regulation to escape liability. With this latter position we agree. Where the statute clearly and unambiguously fixes a tax liability, that is controlling on all parties subject to tax regardless of rules or regulations of administrative departments. *Louisville & Nashville Railroad Co.* v. *United States*, 282 U. S. 740, 51 S. Ct. 297, 75 L. Ed. 672; *United States* v. *Missouri Pacific Railway Com-*

*pany*, 278 U. S. 269, 49 S. Ct. 133, 73 L. Ed. 322; *Burnet* v. *Marston*, 61 App. D. C. 91, 57 F. 2d 611; *Standard Oil Co.* v. *Fitzgerald*, supra; *Austin* v. *Barrett*, 41 Ariz. 138, 16 P. 2d 12.

Defendants cite the fact that Sections 57-12-5, 57-12-6, and 57-12-7, R. S. U. 1933, were amended by Chapter 67, Laws of Utah 1939, so as to require the measurement of gasoline received in Utah and to tax said amount (less a three per cent deduction) to support their position that the statute before amendment did not require measurement of gasoline imported nor impose a tax on that amount. They insist that the legislature intended and did change the sections, or they would not have voted an amendment and cite as authority 59 C. J. 1097-1098. But the section cited states merely that it is *presumed* that the legislature intended to change the existing law in adopting an amendment. And within the very quotation set out in their brief we read:

"* * * The presumption of an intention to change the law falls * * * when the amendment is made to express more clearly the original legislative intent; * * * nor does the fact that the legislature amended a statute to incorporate in detail and in specific terms the meaning it had already been construed to have show that it formerly had no such meaning."

Such is the case here. The 1939 Legislature amended certain sections of the statute to "express more clearly the original legislative intent" which we have found from the language of the statute to be: To require measurement and report of all gasoline imported into the state for sale or use, and to levy a tax on such amount less a three per cent deduction.

We believe that any other points raised by this appeal are collateral to the ones discussed.

For the reasons indicated the judgment is reversed and the cause remanded to the district court for further proceedings in accordance with this opinion. Costs to appellant.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.